### HANKEY ET AL. V. KRAMP.

CONSTRUCTION OF AN OIL AND GAS LEASE.

Where plaintiff has leased his lands, giving the lessee the privilege and right to mine for gas and oil, which lease provides that should gas be found in sufficient quantities to justify marketing, then the lessor is to receive $100 per annum for the gas from each well so long as sold therefrom; therefore, where the lessee has taken gas from other land and used it upon lands of lessor as fuel, and marketed the gas from the lands of the lessor, he would, under the terms of the lease, be required to pay at the rate of $100 per annum for each well for the gas thus marketed, upon the theory that the wells were producing gas in paying quantities.

KING, J. (orally.)

In the court of common pleas, of Wood county, Ohio, Peter Kramp brought an action against John R. Hankey and others upon a written agreement or lease which he claims to have made to the defendants for some of his lands, by which he granted to them the privilege and right to enter upon certain premises and mine for gas and oil.

One of the provisions of that instrument was, that should gas be found in sufficient quantities to justify marketing the same, the consideration in full to the party of the first part was to be one hundred dollars per annum for the gas from each well so long as it was sold therefrom. The lessees of this lease sold and assigned it, and the parties who acquired their interest entered upon the premises and did mine for gas and oil, and in doing that, they drilled some gas wells from which gas was obtained.

They connected these wells up with a pipe line which conveyed gas to the village of Bowling Green, being the line of The Peoples Gas Company. They had other wells upon the line and marketed the gas from such wells as they had to the village of Bowling Green for some period of time,

The petition states that they marketed the gas from the six wells in question, during the year ending December 19, 1893, for which they became indebted, under the provisions of the lease, to the plaintiff, Kramp, in the sum of six hundred dollars with interest from December 19, 1893.

The petition was filed some time after December 19, 1893—about the 5th of April, 1894. There was an answer filed to the petition in which they admit the ownership of the plaintiff to the lands; the execution and delivery of the lease or contract; that defendants took possession of the lands; that they drilled a number of wells; that there was a stipulation in the lease that if gas should be found in sufficient quantities to justify marketing, the consideration in full to plaintiff should be one hundred dollars per annum for the same from each well so long as the same shall be sold; and they deny every other allegation in the petition.

They claim but one well did produce gas in sufficient quantities to justify marketing the same, and that gas was only sold from one well, and that they had offered to pay plaintiff for the one well at the rate of one hundred dollars per year, and they were all the time willing and are now willing to pay the one hundred dollars.

The case went to trial and resulted in a verdict for plaintiff for five hundred dollars and some interest, the jury having found from the testimony that five of the wells drilled were producing gas and that the gas was being used and marketed by the defendants.

Several errors are assigned.

It is claimed that there was some evidence admitted that was improper and that the court erred in its charge.

The only thing in the way of evidence that need be noticed is an exception taken to an answer in a a deposition. The witness was asked what he had been told by one of the defendants that he should say to the plaintiff if the plaintiff should ever ask him what the defendants were going to do about taking this gas, and the witness said that one of the defendants had told him he should say to the plaintiff something that might mislead him as to what they were about to do with the gas. We do not think that evidence was material, and cannot see how it tended to prove anything, yet we do not think it was so prejudicial to the defendants that

The principal errors claimed are to the charge of the court. The evidence shows there were six wells drilled, and these six wells were connected and run into the pipes of the gas company, and through these pipes to the connections put in to furnish gas to the residents of the village of Bowling Green, and for probably a year before the commencement of this suit, in April, 1894, gas had been furnished by these parties who were in the occupancy of these premises to patrons in the village

of Bowling Green, and they had sold quite a large amount of gas; and it was clearly demonstrated if there was any gas at all flowing from these wells that there was nothing to prevent it from flowing into the main pipe which supplied the village and mingling with the other gas, if any, which the defendants owned.

If the wells produced no gas there was nothing to flow into the. main pipe, but if the wells did produce gas, then it must be that it flowed into the main pipe, and it was upon that question that the evidence hinged, and the plaintiff relied largely upon the fact that these wells were connected up and so remained for more than a year.

It was shown that they were not connected up on the 19th of December, but there was nothing to show that they were not connected on the 27th of December, a matter of ten days later. It was claimed by the defendants below that they must have been connected on the 19th or else the plaintiff would not be entitled to recover for a year's rental.

The court charged the jury upon that proposition, and this is complained of: "that if the gas from these wells had been used for a year before the commencement of this suit the plaintiff was entitled to recover for that year from any and all wells from which gas had been furnished in paying quantities for one whole year prior to the bringing of this suit," and in the construction of this contract we concur. We think that was correct, and that a verdict and judgment rendered upon that theory would be a verdict and judgment upon the plaintiff's right of action which had accrued to him up to the bringing of this action on the 19th of April, 1894.

The defendants submitted certain requests which were refused, and I will read two or three of them:

1. "The defendants are not bound to pay for gas used under the boilers in pumping the oil wells on plaintiff's farm under the lease".

2. "The plaintiff cannot recover in this case for the year beginning December 19, 1892, if no gas was sold from the plaintiff's wells until after the 27th day of December, 1892." That I have referred to and disposed of.

3. "Even if the plaintiff might be under some circumstances entitled to recover pay for the gas used by the defendants in drilling and operating the wells upon his land, he cannot recover for the same in this suit under the clause providing for a rental of one hundred dollars per year for the gas sold from each well." We think the court properly refused that one.

Now, as to the first request. There was some evidence to show, or it was claimed by the defendants, that while this gas was connected and run into the pipes which supplied the village of Bowling Green, there was not very much of it in quantity, and they claimed in fact that outside of one well there was not any more gas than would be sufficient to operate the wells themselves, and for the purpose of operating the machinery necessary to be operated on this lease, they piped gas from other wells which they owned on adjoining property, what is called the Wilcox well, I believe, and that the amount which they so procured from all the wells was not more than sufficient to run their own, and that although they sold it, they ought not to be required to pay for it since they had to furnish gas from other wells in its place to operate this lease. This is the ground of the first request. Upon that subject the court said: "If you find that gas from other lands was used upon the lands of the plaintiff as fuel for boilers, and the defendant took the gas from

the lands of the plaintiff and marketed the same, and did this for one year or more prior to the commencement of this action, then your verdict should be for the plaintiff for the amount stipulated in the contract for such number of wells as you shall find gas was so marketed from."

The court said somewhere else that the defendants would have the right to use so much of this gas as these wells produced as was necessary to properly conduct the operations upon the lease, which we think was right. So that the theory upon which that question was submitted was, that though the defendants might have used the gas in their operations of plaintiff's wells without paying for it, yet, if they elected to sell it, they would then be required to pay for it, and upon the theory that those wells were producing gas in paying quantities, and we think that is the correct construction of this lease. We think that though they might use this gas in operating the wells, that if they sold it, that should be considered an election on their part to treat this as a production of gas in paying quantities, which they were then selling and marketing. I should say also that the court gave the fourth request asked by the defendants below which bore upon that point: "If any of these wells did not produce any more gas than was used by the defendants in the reasonable use thereof for the operations of the wells on plaintiff's land, the plaintiff is not entitled to recover for the gas from such wells."

The court also said: . "You have the right to consider what the defendants did towards marketing the gas,—whether they connected the gas wells on plaintiff's lands with the line leading therefrom to the village of Bowling Green. Whether they sold and marketed the gas from wells, whatever number you may find in addition to the one that I have mentioned is admitted, for at least one year prior to the commencement of this action, and your verdict should be for the amount stipulated in this lease, one hundred dollars, that being the amount agreed on and provided therein should be paid."

Then, at the plaintiff's request, the following was given to the jury: "The fact that any well was connected with the line leading into Bowling Green so as to permit gas therefrom to flow into such line and be distributed to customers, is evidence tending to prove that gas was produced by such well in paying quantities."

Very serious objection is made to the giving of that request in connection with the charge which I have read as given by the court; that the court, by that request, submitted one fact to the jury and told them that if they found that to be true, that that would be evidence tending to prove that gas was produced by such well in paying quantities. It is argued that this is contrary to the decision of the supreme court. The court has said to the jury in its charge that they must find from all the evidence (and the burden of proof is upon the plaintiff) that these wells during all the period in question produced gas in paying quantities, and that the defendants sold the gas therefrom. Now, that was submitting the whole case to the jury upon the evidence. The plaintiff, by the request read, asked the court to say to the jury that if they found the fact to be that the defendants connected each of these wells with a pipe line that run from that field to a neighboring market, and which pipe line connected with customers who took and used gas during this period in question, that fact should constitute and be evidence tending to prove that these wells produced gas in paying quantities.

Is it not true that if these parties have the option of taking this gas or of letting it alone, and they see fit to connect these wells with a pipe line

that furnishes gas to customers, why might not a court say that would be evidence tending to prove that those wells produced gas in paying quantities. I don't see why it would not be conclusive evidence of that fact, and that a court might well charge the jury if they found that to be the fact, it would be presumed that the wells produced gas in paying quantities.

This charge is, that if such a fact existed, that these parties were using all the gas that these wells produced, and connecting it with their pipe line, that would be evidence that the wells were producing gas in paying quantities.

That they were selling it cannot be denied, and whether it was more or less, it was all going into their line.

Why should the lessor be required to produce any higher degree of proof than that these defendants were piping this gas into the line for customers to take, and that the customers took and paid for it? For that reason, I say, I think the court would have been justified in saying that such fact would have been a presumption of the fact that these wells were producing gas in paying quantities, and that they were selling it, because the fact that they were selling it was not denied, and if that is so, then the court did not err in the charge it gave on that point.

Therefore, we do not think there is any error in this charge and affirm the judgment.

*Parker & Fries*, Attorneys for Plaintiffs in Error.

*Troup & Dunn*, Attorneys for Defendant in Error.